IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | | |
|---|---|---|
| JOHNNY MARTIN LEDFORD, | ) | |
|   Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:14cv00001 |
| | ) | |
| CAROLYN W. COLVIN, | ) | **MEMORANDUM OPINION** |
|  Acting Commissioner of | ) | |
|  Social Security, | ) | BY: PAMELA MEADE SARGENT |
|   Defendant | ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Johnny Martin Ledford, ("Ledford"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claims for disability insurance benefits, ("DIB"), and supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. §§ 423 and 1381 *et seq.* (West 2011 & West 2012). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

-1-

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Ledford protectively filed applications for DIB and SSI on October 22, 2010, alleging disability as of May 21, 2007, due to depression, anxiety, a ruptured appendix and stomach pain resulting from surgery for colon cancer. (Record, ("R."), at 193-94, 195-98, 211, 215, 236.) The claims were denied initially and on reconsideration. (R. at 96-98, 103-05, 111, 114-16, 118-23, 125-27.) Ledford then requested a hearing before an administrative law judge, ("ALJ"). (R. at 128.) A hearing was held on July 17, 2012, at which Ledford was represented by counsel. (R. at 29-54.)

By decision dated July 27, 2012, the ALJ denied Ledford's claim. (R. at 12-23.) The ALJ found that Ledford met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2011. (R. at 14.) The ALJ also found that Ledford had not engaged in substantial gainful activity since May 21, 2007, his alleged onset date.[1] (R. at 14.) The ALJ found that the medical evidence established that through the date last insured, Ledford suffered from severe impairments, namely a goblet cell carcinoid tumor adjacent to his ruptured appendix with right hemicolectomy; appendectomy; lumbar spondylosis;

---

[1] Therefore, Ledford must show that he became disabled between May 21, 2007, the alleged onset date, and December 31, 2011, the date last insured, in order to be entitled to DIB benefits.

-2-

borderline intellectual functioning; anxiety and depression, but she found that Ledford did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14, 16.) The ALJ found that Ledford had the residual functional capacity to perform simple, unskilled, repetitive medium work,[2] which did not require more than occasional climbing of ramps and stairs, balancing, kneeling, crawling, crouching and stooping and interaction with the general public; and that did not require more than concentrated exposure to hazardous machinery, unprotected heights, climbing of ladders, ropes or scaffold and vibration. (R. at 18.) The ALJ found that, through the date last insured, Ledford was unable to perform any of his past relevant work. (R. at 21.) Based on Ledford's age, limited education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ also found that other jobs existed in significant numbers in the national economy that Ledford could perform, including jobs as an assembler, a packer and a stock clerk. (R. at 22.) Thus, the ALJ found that Ledford was not under a disability as defined by the Act, and was not eligible for DIB benefits. (R. at 22-23.) *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (2015).

After the ALJ issued her decision, Ledford pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 1-5.) Ledford then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481 (2015). The case is before this court on Ledford's motion for summary judgment

---

[2] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. §§ 404.1567(c), 416.967(c) (2015).

filed January 5, 2015, and the Commissioner's motion for summary judgment filed February 6, 2015.

## II. Facts

Ledford was born in 1958, (R. at 35, 193), which, at the time of the ALJ's decision, classified him as a "person closely approaching advanced age" under 20 C.F.R. §§ 404.1563(d), 416.963(d). Ledford has a seventh grade education,[3] and past relevant work as a carpenter. (R. at 36, 38, 216.) At his hearing, Ledford testified that he could read, write, add, subtract and count money. (R. at 36.) Ledford stated that he had his appendix removed in October 2010, and during surgery, it was discovered that he had cancer. (R. at 38.) He stated that he suffered from a burning sensation in his stomach and right shoulder and left leg pain. (R. at 38-39.) He stated that he did not take any pain medication. (R. at 39-40.) Ledford stated that he could not raise his right arm above his head. (R. at 40.) He stated that he could walk up to 400 feet without interruption and that he could stand or sit up to one hour without interruption. (R. at 41.) Ledford stated that his medication helped his symptoms of depression. (R. at 43.)

John Newman, a vocational expert, also was present and testified at Ledford's hearing. (R. at 48-53.) Newman classified Ledford's work as a carpenter as medium and skilled. (R. at 50-51.) Newman was asked to consider a hypothetical individual of Ledford's age, education and work history, who had the residual functional capacity to perform simple, repetitive, unskilled medium work,

---

[3] Ledford reported on his Disability Report that he completed the eighth grade; however, he testified at his hearing that he completed the seventh grade. (R. at 36, 216.)

-4-

which did not require more than occasional climbing of ramps and stairs, balancing, kneeling, crawling, stooping and crouching; and that did not require more than concentrated exposure to hazardous machinery, unprotected heights, climbing of ladders, ropes or scaffolds and vibrating surfaces. (R. at 51.) Newman stated that such an individual could not perform any of Ledford's past work. (R. at 51.) However, he stated that a significant number of jobs existed that such an individual could perform, including jobs as an assembler, a packer and a stock clerk or order filler. (R. at 52.) Newman stated that there would be no jobs available should the individual be absent from work more than two days a month. (R. at 52-53.)

In rendering her decision, the ALJ reviewed medical records from Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Bert Spetzler, M.D., a state agency physician; Dr. Robert McGuffin, M.D., a state agency physician; Joseph Leizer, Ph.D., a state agency psychologist; Dr. Tamy E. Perng, D.O.; Stone Mountain Health Services; Lawton Elementary School; Johnston Memorial Hospital; Norton Community Hospital; L. Andrew Steward, Ph.D., a licensed clinical psychologist; and the University of Virginia.

On October 8, 2010, Ledford was admitted to Norton Community Hospital and then transferred to Johnston Memorial Hospital for a ruptured appendix. (R. at 313-17, 325-31, 527-41.) A CT scan of Ledford's abdomen and pelvis showed a large inflammatory mass within the right lower quadrant indicative of acute appendicitis and possible abscess, a 2.5 centimeter rounded density within the right mid abdomen of indeterminate etiology and atherosclerotic vascular disease. (R. at 333-34.) Ledford underwent placement of a catheter to drain the periappendiceal

abscess. (R. at 314.) Ledford tolerated the procedure well, and there were no immediate complications. (R. at 314.)

On October 13, 2010, Dr. Tamy E. Perng, D.O., saw Ledford for follow-up after his catheter placement. (R. at 322.) Abdominal examination revealed a right lower quadrant drain with no tenderness to palpation. (R. at 322.) Dr. Perng diagnosed acute appendicitis with rupture/intraabdominal abscess and right lower quadrant abdominal pain, resolved. (R. at 322.) On October 20, 2010, Dr. Perng removed the drain with no difficulties. (R. at 323.) On November 8, 2010, Dr. Perng reported that Ledford's drain site had completely healed, and he showed no tenderness to palpation. (R. at 324.) On November 16, 2010, Ledford underwent an appendectomy. (R. at 339-44.) On November 22, 2010, examination of Ledford's appendix showed an invasive Goblet cell carcinoid tumor of the mid portion of the appendix and a noninvasive mucinous cystadenoma of the tip of the appendix. (R. at 336.) On December 1, 2010, Ledford denied abdominal pain, nausea, vomiting, fever or chills. (R. at 338.) Dr. Perng reported that Ledford's abdominal examination was benign. (R. at 338.) She recommended referring Ledford to a surgical oncologist. (R. at 338.) On February 2, 2011, Dr. Perng diagnosed cellulitis with abscess of the anterior abdomen and surgical site infection. (R. at 421.) On February 7, 2011, Dr. Perng reported significant improvement of the wound. (R. at 420.) On February 23, 2011, Ledford's abdominal exam revealed mild tenderness to palpation with no rebound. (R. at 419.)

On December 29, 2010, Ledford was evaluated at the University of Virginia for appendiceal carcinoma. (R. at 351-53.) On January 20, 2011, Dr. Traci Hedrick, M.D., performed a colonoscopy. (R. at 347-48.) The colonoscopy

revealed diverticulosis, a large sessile mid-transverse colon, a distal transverse colon polyp, a sigmoid polyp and pan diverticulosis. (R. at 347-48.) Based on these findings, Dr. Hedrick recommended that Ledford undergo a right hemicolectomy. (R. at 348.) On January 21, 2011, Ledford underwent an extended right hemicolectomy, which showed no evidence of metastatic disease. (R. at 349-50.) On a follow-up visit on February 21, 2012, Ledford reported that he had done well with the exception of persistent drainage from his midline wound. (R. at 543.) Dr. Hedrick reported that the drainage was from the suture knot that had not dissolved, and she offered to open the incision and remove the knot, but Ledford declined. (R. at 543.) A CT scan of Ledford's abdomen was stable in appearance, and no other signs of metastatic disease was seen. (R. at 543, 548-49.)

On March 24, 2011, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Ledford suffered from a nonsevere affective disorder. (R. at 58-59.) Leizer noted that Ledford did not carry the diagnosis of any mental condition. (R. at 58.)

On March 28, 2011, Dr. Bert Spetzler, M.D., a state agency physician, opined that Ledford had the residual functional capacity to perform medium work. (R. at 60-61.) He noted that Ledford could occasionally climb ramps, stairs, ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. (R. at 60.) No manipulative, visual or communicative limitations were noted. (R. at 60.) Dr. Spetzler found that Ledford should avoid concentrated exposure to hazards. (R. at 61.) Dr. Spetzler noted that Ledford's condition was then-currently severe, but that it was expected to improve and would not result in significant limitations on Ledford's work-related abilities. (R. at 62.)

-7-

Case 2:14-cv-00001-PMS   Document 18   Filed 12/21/15   Page 7 of 17   Pageid#: 639

On May 26, 2011, Dr. Robert McGuffin, M.D., a state agency physician, opined that Ledford had the residual functional capacity to perform medium work. (R. at 79-80.) He noted that Ledford could frequently climb ramps, stairs, ladders, ropes and scaffolds, stoop, kneel, crouch and crawl. (R. at 80.) No manipulative, visual, communicative or environmental limitations were noted. (R. at 80.)

On June 2, 2011, Joseph Leizer, Ph.D., a state agency psychologist, completed a PRTF, indicating that there was no documentation to indicate that Ledford suffered from a psychiatric impairment. (R. at 78.)

The record shows that Ledford treated with Crystal Burke, L.C.S.W., a licensed clinical social worker with Stone Mountain Health Services, as well as various nurses. (R. at 260-85, 465-92.) On July 6, 2011, Ledford reported that his mood was "okay" during the day. (R. at 487.) He reported having difficulty falling asleep. (R. at 487.) He was diagnosed with generalized anxiety disorder. (R. at 489.) On July 14, 2011, Burke reported that Ledford had symptoms of depressive disorder and anxiety disorder due to his chronic, and possibly terminal, medical problems. (R. at 279.) On August 11, 2011, Ledford reported that he remained very worried about his health. (R. at 278.) Ledford appeared depressed and anxious. (R. at 278.) On September 8, 2011, Ledford reported discharge from his abdominal wound incision. (R. at 484.) He was diagnosed with cellulitis. (R. at 486.) That same day, Ledford reported to Burke that he was very concerned about "Doom's Day" coming soon. (R. at 273.) He reported having problems functioning, looking forward to anything because of his health and the issues in society being so bad. (R. at 273.) Burke reported that Ledford continued to have significant problems with depression and poor coping strategies for symptoms and stressors. (R. at 273.)

On November 10, 2011, Ledford reported that he felt depressed, lacked motivation and was unable to concentrate. (R. at 481.)

On January 5, 2012, Ledford reported that his symptoms of anxiety and depression were worsening. (R. at 260.) Burke reported that Ledford had a depressed mood and that he exhibited significant symptoms of depression. (R. at 260.) On February 2, 2012, Ledford reported that he often felt depressed and sad and had little or no interest in activities. (R. at 554.) On March 1, 2012, Ledford reported that medication was helping his depression and he had increased energy. (R. at 468, 553.) X-rays of Ledford's lumbar spine showed L5-S1 spondylosis. (R. at 471.) Burke noted that Ledford appeared to be mildly depressed. (R. at 553.) On March 29, 2012, Ledford reported that his sleep and depression had improved. (R. at 465.) On April 5, 2012, Burke completed a mental assessment, indicating that Ledford had a seriously limited, but not precluded, ability to perform work-related occupational, performance and personal/social adjustments. (R. at 494-96.) She opined that Ledford would be absent from work more than two days a month. (R. at 496.)

On June 1, 2012, L. Andrew Steward, Ph.D., a licensed clinical psychologist, evaluated Ledford at the request of Ledford's attorney. (R. at 556-65.) Steward reported that Ledford had a constricted affect and anxious and dysphoric mood. (R. at 557.) Steward reported that all mental functions, including fund of information, judgment, abstract reasoning, and ability to perform calculations and attention and concentration all were within the average range. (R. at 557.) Ledford's immediate, recent and remote memory were somewhat depressed. (R. at 557.) The Wechsler Adult Intelligence Scale - Fourth Edition,

("WAIS-IV"), was administered, and Ledford obtained a full-scale IQ score of 77. (R. at 561-62.) The Beck Anxiety Inventory, ("BAI"), indicated that Ledford suffered from severe anxiety. (R. at 562.) The Beck Depression Inventory-II, ("BDI-II"), indicated that Ledford suffered from severe depression. (R. at 562.) Steward diagnosed major depressive disorder, single episode, severe without psychotic features; generalized anxiety disorder; and borderline intellectual functioning. (R. at 565.) He assessed Ledford's then-current Global Assessment of Functioning, ("GAF"),[4] score at 46.[5] (R. at 565.)

Steward completed a mental assessment, indicating that Ledford had a satisfactory ability to understand, remember and carry out simple instructions. (R. at 567-69.) He opined that Ledford had a seriously limited, but not precluded, ability to follow work rules, to use judgment, to function independently, to maintain attention/concentration, to understand, remember and carry out detailed and complex instructions and to maintain personal appearance. (R. at 567-68.) Steward found that Ledford had no useful ability to relate to co-workers, to deal with the public, to interact with supervisors, to deal with work stresses, to behave in an emotionally stable manner, to relate predictably in social situations and to demonstrate reliability. (R. at 567-68.) He opined that Ledford would be absent from work more than two days a month. (R. at 569.)

---

[4] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[5] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

Case 2:14-cv-00001-PMS   Document 18   Filed 12/21/15   Page 10 of 17   Pageid#: 642

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB and SSI claims. *See* 20 C.F.R. §§ 404.1520, 416.920 (2015). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. §§ 404.1520, 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a) (2015).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2011 & West 2012); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining

whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Thus, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. §§ 404.1527(c), 416.927(c), if she sufficiently explains her rationale and if the record supports her findings.

Ledford argues that the ALJ failed to properly determine his residual functional capacity. (Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 6-7). Specifically, Ledford argues that the ALJ erred by relying on the state agency physicians opinions rather than requesting a physical capacities evaluation from his treating physicians. (Plaintiff's Brief at 6-7.) Ledford also argues that the ALJ erred by substituting her own medical opinion for the opinion of a qualified mental health professional. (Plaintiff's Brief at 7-9.)

Ledford further argues that the ALJ erred by ignoring the opinions of his two treating sources, Steward and Burke, and, in doing so, failed to give a reason as to why she was not giving them full consideration. (Plaintiff's Brief at 7-9.) Finally, Ledford argues that the ALJ erred by failing to consider his impairments in combination in determining his residual functional capacity. (Plaintiff's Brief at 7-9.)

The ALJ found that the medical evidence established that, through the date last insured, Ledford suffered from severe impairments, namely a goblet cell carcinoid tumor adjacent to his ruptured appendix with right hemicolectomy; appendectomy; lumbar spondylosis; borderline intellectual functioning; anxiety and depression, but she found that Ledford did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14, 16.) The ALJ found that Ledford had the residual functional capacity to perform simple, unskilled, repetitive medium work, which did not require more than occasional climbing of ramps and stairs, balancing, kneeling, crawling, crouching and stooping and interaction with the general public; and that did not require more than concentrated exposure to hazardous machinery, unprotected heights, climbing of ladders, ropes or scaffold and vibration. (R. at 18.)

The ALJ noted that the residual functional capacity determination was supported by Ledford's daily activities, his routine and conservative treatment and the opinion of Burke, except for her finding that Ledford would be absent from work more than two days per month. (R. at 21.) Based on my review of the record, I find that substantial evidence supports the ALJ's finding with regard to her

-13-

residual functional capacity determination. The record shows that Ledford was able to walk, go outside twice a week to shop for various household items, clean the house, take care of his laundry and watch television. (R. at 44, 46-47.) Ledford's medical treatment was routine and conservative once his surgical procedures were complete. Treatment notes from his family practitioner in March 2012 show that Ledford denied any gastrointestinal problems, and his abdominal wound was healing slowly, but improved. (R. at 465.) In fact, Ledford testified that he did not take pain medication. (R. at 39-40.) In March and May 2011, the state agency physicians found that Ledford had the residual functional capacity to perform medium work. (R. at 60, 79-80.) They also found that Ledford's condition was then-currently severe, but that it was expected to improve and would not result in significant limitations on his work-related abilities. (R. at 62, 82.) Furthermore, Ledford's treating physician placed no limitations on his work-related abilities.

While Ledford contends that the ALJ should not have relied upon the opinions of the state agency physicians in determining his residual functional capacity, the regulations fully permit an ALJ to do so. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (2015) (providing for the consideration of opinions of medical and psychological consultants and other nonexamining physicians and psychologists). The ALJ's reliance on the state agency physicians' opinions was appropriate. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (explaining that the opinion of state agency medical consultants merit significant consideration because they are experts in Social Security disability evaluation).

In Ledford's second argument, he contends that the ALJ substituted her own

-14-

opinion for that of a qualified mental health professional when, allegedly, she "essentially found that Ledford [did] not have serious mental or emotional limitations." (Plaintiff's Brief at 7.) I find this argument unpersuasive. The ALJ found that Ledford's anxiety and depression were severe impairments. (R. at 14.) The ALJ acknowledged that Ledford's anxiety and depression resulted in significant limitations in his ability to do basic work-related activities. *See* 20 C.F.R. §§ 404.1521(a), 416.921(a) (stating that an impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities). The ALJ accounted for limitations from Ledford's anxiety and depression when she determined that he had the mental residual functional capacity for unskilled work with only simple, repetitive tasks and only occasional interaction with the general public. (R. at 18.)

The ALJ noted that she gave some weight to Burke's opinion that Ledford would have a fair ability in all areas of work-related mental functioning, but not to her opinion that Ledford would be absent from work more than two days per month. (R. at 20.) The ALJ noted that Ledford had worked as a carpenter until he moved out of state because his brother was ill. (R. at 487.) Ledford stated that he applied for disability because there was no work available in the area. (R. at 487.) The ALJ gave minimal weight to Steward's opinion because he saw Ledford on only one occasion and appeared to rely too heavily on Ledford's subjective complaints. (R. at 21.) In addition, Steward's opinion was inconsistent with the record as a whole, which showed that Ledford's mental health treatment was relatively conservative, and he reported improvement in his symptoms with medication. (R. at 465, 468, 553.) Burke described his depression as mild. (R. at 553.) "If a symptom can be reasonably controlled by medication or treatment, it is

-15-

not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986).

Lastly, Ledford argues that the ALJ erred by failing to consider his impairments in combination in determining his residual functional capacity. (Plaintiff's Brief at 7-9.) He argues that the ALJ did not properly consider how his mental impairments would affect his ability to function outside of the home. I find this argument unpersuasive. In her residual functional capacity finding, the ALJ accounted for both physical and mental restrictions. With regard to his mental abilities, the ALJ restricted Ledford to occasional interaction with the general public and the performance of unskilled and repetitive work. There is evidence in the record that Ledford got out of the house twice weekly to buy cigarettes, soda or a loaf of bread. (R. at 47.) In a December 2010 Function Report, and in another undated Function Report, he indicated that he could shop in stores, he socialized with family and attended medical appointments. (R. at 229-30, 242-49.) As the Commissioner states in her brief, it appears that Ledford's depression worsened because he was unemployed, not vice versa. For instance, in June 2012, he stated that he was depressed because he had nothing to do and had no money. (R. at 557.) Also in June 2012, he reported that he did not visit anyone because he did not know anyone "around here," not because he did not want to socialize. (R. at 558.) For these reasons, I find that the ALJ properly considered the effects of Ledford's mental impairments on his ability to function outside of the home, and she gave him the benefit of the doubt in incorporating them into her residual functional capacity finding.

Based on the above reasoning, I conclude that substantial evidence supports the ALJ's weighing of the psychological evidence, and I further find that substantial evidence exists in the record to support the ALJ's residual functional

capacity finding. Ledford's request for oral argument is denied based on the briefs having adequately addressed the issues. An appropriate order and judgment will be entered.

DATED: December 21, 2015.

                                                /s/   *Pamela Meade Sargent*
                                                       UNITED STATES MAGISTRATE JUDGE